UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PERCY HOWARD,                          :
      Plaintiff,                    :
                         :
      v.                            :     Case No. 3:19cv1624 (DJS)
                         :
DIRECTOR ANTONIO SANTIAGO, ET AL, :
      Defendants.                   :

## RULING AND INITIAL REVIEW ORDER

The plaintiff, Percy Howard, is incarcerated in the MacDougall-Walker Correctional

Institution.  He initiated this action by filing a civil rights complaint against Directors of Security

Antonio Santiago and Christine Whidden, Security Risk Group Coordinator Aldi ("SRG

Coordinator Aldi"), Hearing Officer Acevedo, Lieutenant Russell, and Correctional Officer

Payne.  He has also filed a motion seeking an order that he be excused from paying the full filing

fee.  For the reasons set forth below, the court will deny the motion for relief from payment of

the full filing fee and dismiss the complaint in part.

## I.    Motion for Relief [ECF No. 10]

The plaintiff asks the court to waive payment of the full filing fee.  He states the

Department of Correction has already collected some funds from his inmate account towards

payment of the $350.00 filing fee.  He would like to be relieved of paying the remainder of the

filing fee because he either will not have a "steady flow of income" in the future or prefers that

the Department of Correction refrain from interfering with his "steady flow of income" in the

future.

As a preliminary matter, the court notes that the motion is not signed by the plaintiff.

Thus, it does not comply with Rule 11(a) of the Federal Rules of Civil Procedure.  ("Every

pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented.").

Even if the motion had been signed, the plaintiff's application to proceed *in forma pauperis* includes an acknowledgment that he will be responsible for paying the full filing fee even if the court initially permits him to proceed without prepayment of the fee. *See* IFP, ECF No. 7, at 1. Furthermore, in signing the PRISONER AUTHORIZATION form as part of the application to proceed *in forma pauperis*, the plaintiff agreed to pay the full filing fee even if the court subsequently dismissed the case and authorized the Department of Correction to deduct funds from his inmate account in installments towards payment of the fee. *See id.* at 2. Accordingly, the plaintiff's request that the court either waive the filing fee in full or direct the Department of Correction to cease deducting funds from his inmate account towards payment of the full filing fee is denied.

## II.    Initial Review Order

Plaintiff alleges that the defendants violated his First, Eighth, and Fourteenth Amendment rights in connection with his designation as an SRG (Security Risk Group) member in May 2018 and his subsequent placement in the SRG Program after re-entering the Department of Correction in October 2018. He seeks monetary damages and declaratory and injunctive relief.

### A.    Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### B.   <u>Factual Allegations</u>

As of April 30, 2018, the plaintiff was confined at New Haven Correctional Center as a pretrial detainee.  *See* Compl. at 7 ¶ 1 & at 9.  On that date, Officer Payne and Lieutenant Russell, who were members of the Intelligence Unit, interviewed the plaintiff about comments and photographs that had been posted to his Facebook page prior to his admission to New Haven Correctional Center.  *Id.* ¶ 2 & at 9-10, 12.  Lieutenant Russell and Officer Payne accused the plaintiff of being affiliated with the Bloods gang, an SRG, based on his Facebook posts.  *Id.* ¶ 3 & at 9, 12.  The plaintiff denied the accusation that he was a member of the Bloods gang.  *Id.* ¶ 4.

At the conclusion of the interview, Lieutenant Russell and Officer Payne informed the plaintiff that SRG Coordinator Aldi had directed them to charge him with SRG affiliation.  *Id.*

¶ 5.  Both Lieutenant Russell and Officer Payne escorted the plaintiff to a cell in the restrictive housing unit.  *Id.* ¶ 2.  That same day, the plaintiff signed a form notifying him that a hearing to determine his status as an SRG member would be held on May 2, 2018. *Id.* at 14. The form indicated that the hearing was initiated because he had exhibited "[k]nown hand signs, colors, graffiti, and/or articles that can be attributed to the [security risk] group." *Id.*

 During his confinement in the restrictive housing unit before the hearing, the plaintiff did not receive a supplemental notice of the charges asserted against him or a disciplinary report charging him with SRG affiliation.  *Id.* at 7 ¶ 6.  On May 3, 2018, the plaintiff participated in a hearing.  *Id.* ¶¶ 8-10.  Hearing Officer Acevedo informed the plaintiff that he would be unable to "beat" the charge that he was affiliated with the Bloods gang, an SRG.  *Id.* ¶ 9.  At the conclusion of the hearing, Officer Acevedo designated the plaintiff as a member of an SRG.  *Id.* ¶ 10.  On August 16, 2018, the plaintiff posted bond and prison officials discharged him from the Department of Correction.  *Id.* ¶ 12.

On October 6, 2018, prison officials readmitted the plaintiff to a Department of Correction facility as a pretrial detainee.  *Id.* at 8 ¶¶ 21, 26.  Prison officials transferred the plaintiff to administrative segregation to participate in Phase 3 of the SRG Program at Corrigan-Radgowski Correctional Institution without providing him with a 90-day review in accordance with State of Connecticut Department of Correction Administrative Directive 6.14.  *Id.* ¶ 22.

On April 10, 2019, pursuant to the plaintiff's pleas of guilty to three criminal charges, a judge in the Connecticut Superior Court for the Judicial District of Waterbury sentenced the plaintiff to a total effective sentence of four years of imprisonment.  *See State v. Howard*, Docket

No. U04W-CR18-0454286-S.[1]  On June 30, 2019, the plaintiff was involved in an altercation with a member of the Bloods gang.  Compl. at 8 ¶ 26.

After the plaintiff's reincarceration in October 2018, mental health providers did not prescribe him with the medication that had been prescribed for him when he was out of prison. *Id.* ¶ 29.  The medication had helped the plaintiff with anxiety, depression, hearing voices, and sleep issues.  *Id.*

At the time he filed this action, the plaintiff, as a sentenced inmate, was confined in Phase 3 of the SRG Program at Corrigan-Radgowski with both pretrial detainees and other sentenced prisoners and was "doing hard time."  *Id.* at 25 ¶¶ 3, 16.  The plaintiff experienced many restrictive or uncomfortable conditions of confinement in Phase 3 of the SRG Program.  *Id.* at 25.  Those conditions included a lack of access to a library, vocational and educational classes, group religious services, and a brush to clean his toilet, as well as limited access to showers, telephone calls, visits from family members, and time in the gym.  *Id.*  In addition, prison officials required the plaintiff to brush his teeth with a small toothbrush, write letters and grievances with a security pen, and wear a white jumpsuit, prohibited him from purchasing a hot pot to warm up his food, and imposed a spending limit on his commissary purchases.  *Id.* ¶¶ 4-15.  As an inmate participating in the SRG Program, the plaintiff may not receive good time

---

[1]   The State of Connecticut Judicial Branch website reflects that on February 1, 2019, Plaintiff pleaded guilty to one count of unlawful restraint in the first degree and one count of strangulation/suffocation in the second degree in *State v. Howard*, Docket No. U04W-CR18-0454286-S and on the same date pleaded guilty to one count of reckless endangerment in the first degree in *State v. Howard*, Docket No. U04W-CR18-0452512-S.  On April 10, 2019, a judge sentenced the plaintiff to four years of imprisonment, execution suspended after two years and followed by three years of probation on both counts in *State v. Howard*, Docket No. U04W-CR18-0454286-S and sentenced the plaintiff to one year of imprisonment on the reckless endangerment count in *State v. Howard*, Docket No. U04W-CR18-0452512-S.  This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions – by Docket Number using: Docket No. U04W-CR18-0454286-S and Docket No. U04W-CR18-0452512-S (Last visited on May 31, 2020).

credits or be released to a halfway house or on parole.  *Id.* ¶ 2.


    **C.**    <u>**Discussion**</u>

       The plaintiff contends that the defendants violated his Fourteenth Amendment procedural

due process rights and First Amendment right to free speech in connection with his designation

as an SRG member in May 2018; violated his Fourteenth Amendment substantive and

procedural due process rights in connection with his automatic placement in the SRG Program

upon his readmission to the Department of Correction in October 2018; and subjected him to

conditions of confinement upon his readmission to the Department of Correction that violated his

rights under the Eighth Amendment.  He also asserts a state law claim of intentional infliction of

emotional distress.[2]  For relief, the plaintiff seeks punitive and compensatory damages, a

declaratory judgment, and an injunction directing Director Santiago to remove him from the

SRG Program and to place him in general population.  *Id.* at 33.

    **A.**    <u>**Eleventh Amendment – Monetary Damages and Declaratory Relief**</u>

       To the extent that Plaintiff seeks monetary relief from the defendants in their official

capacities, the request is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S.

159 (1985) (the Eleventh Amendment, which protects the state from suits for monetary relief,

---

[2]  The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims.  That is because the core purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants.  If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 166 (D. Conn. 2005).  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.  More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the request for compensatory and punitive damages for violations of the plaintiff's federal constitutional rights by the defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff seeks a judgment declaring that all defendants violated his federal constitutional rights. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Insurance Agency,* 482 F.3d 612, 618 (2d Cir. 2007). The plaintiff's request for a declaration that the defendants violated his federal constitutional rights in the past is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"). Furthermore, if the plaintiff were to prevail on either his First, Eighth or Fourteenth Amendment claims, the court necessarily would determine that the defendants had violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary. Accordingly, the request for a declaratory judgment is dismissed.

### B.       First and Fourteenth Amendments – Initial Designation as SRG Member

The plaintiff asserts a First Amendment retaliation claim based on the defendants' reliance on his Facebook posts to accuse him of membership in a gang called the Bloods and to hold a hearing in May 2018 to determine whether to designate him as a member of an SRG. He also contends that in connection with the SRG designation hearing, Hearing Officer Acevedo,

Lieutenant Russell, and Correctional Officer Payne failed to provide him with adequate notice of the charges against him and an opportunity to present a defense.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires a prisoner to exhaust "such administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, *see Porter v. Nussle*, 534 U.S. 516, 532 (2002). An inmate must exhaust available administrative remedies "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See Amaker v. Bradt*, 745 F. App'x 412, 413 (2d Cir. 2018).

Furthermore, the PLRA requires "proper exhaustion" which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83-84). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). A court may, however, dismiss a complaint for failure to state a claim where the allegations on the face of the complaint establish that it is

subject to dismissal, even on the basis of an affirmative defense.  *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (citing *Jones*, 549 U.S. at 215).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6.  *See* Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf.  The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel.  As indicated above, the plaintiff asserts a claim relating to his designation as an SRG member in May 2018.

A claim related to an inmate's designation as an SRG member is subject to the Inmate Grievance Procedures set forth in 9.6(9).  *See id.* 9.6(4)(D); 9.6(9).  Administrative Directive 9.6(9) provides that an inmate or detainee may appeal an initial SRG designation by completing and filing an Inmate Administrative Remedy Form, CN 9602, within fifteen calendar days of the notice of designation.  *See id.* at 9.6(9).  The appropriate District Administrator shall respond in writing within fifteen business days of his or her receipt of the appeal.  *See id.*  The decision of the District Administrator is final and there is no other avenue to appeal his or her decision.  *See id.*

The plaintiff has attached a copy of the decision dated May 3, 2018 informing him that he had been designated as an SRG member and that he could appeal that designation within fifteen days pursuant to Administrative Directive 9.6.  Compl. at 11.  The plaintiff signed the decision on May 3, 2018.  *Id.*  On September 15, 2019 and October 7, 2019, the plaintiff attempted to

challenge the 2018 decision to designate him as an SRG member based on his Facebook posts. *See id.* at 27-30.  On October 4, 2019, in response to the September 15, 2019 grievance, a prison official noted that an appeal of an SRG designation decision must be filed within fifteen calendar days of the date of the notice of the decision and that the plaintiff had been designated as a member of the Bloods gang in May of 2018.  *See id.* at 27.  Because the grievance had not been received by the Administrative Remedies Coordinator until September 18, 2019, the prison official rejected it as having been filed in an untimely manner.  *See id.*  On October 10, 2019, in response to the October 7, 2019 grievance, Administrative Remedies Coordinator King returned the grievance without disposition because the plaintiff had not attached copies of the inmate requests that he had sent to SRG Coordinator Papoosha and Directors of Security Whidden and Santiago on August 29, 2019, and also because the grievance included more than one grievable matter.  *See id.* at 29-30.

These documents demonstrate that the plaintiff did not attempt to exhaust his administrative remedies as to his May 2018 SRG designation or his placement in the SRG Program in a timely or proper manner prior to filing this action.  Thus, the court concludes on this record that the First Amendment retaliation claim and the Fourteenth Amendment due process claims related to his designation as an SRG member in May 2018 are subject to dismissal for failure to fully exhaust available administrative remedies prior to filing this action. *See* 42 U.S.C. § 1997e(a).

### C.   Fourteenth Amendment - Substantive Due Process
### Readmittance to Department of Correction in October 2018

The plaintiff claims that on October 6, 2018, he was readmitted to the Department of Correction, immediately placed in the restrictive housing unit, and then transferred to Corrigan-Radgowski to participate in Phase 3 of the SRG Program.  He has asserted facts to suggest that

10

Directors of Security Antonio Santiago and Christine Whidden and SRG Coordinator Aldi failed to provide him with or facilitate the provision of due process in connection with his automatic placement back in the SRG Program upon his readmission to custody.  The plaintiff alleges that these defendants violated his Fourteenth Amendment substantive due process rights.

### 1.   Placement in Phase 3 of SRG Program

In evaluating whether a restrictive status or condition imposed on a pretrial detainee constitutes a violation of the detainee's substantive due process rights under the Fourteenth Amendment, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69 (1963)). "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539.  If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*  Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees." *Id.* at 540.

In *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017), the Second Circuit considered a substantive due process claim asserted by a pretrial detainee who had been returned to administrative segregation simply because he had been in administrative segregation when last discharged from custody and had not completed the administrative segregation program by the date of his prior discharge. The Second Circuit held that the defendants violated Allah's substantive due process rights because the placement was not the result of any individualized assessment of Allah's risk to the security of the facility and was therefore punitive. *Id.* at 56-58. Here, prison officials placed the plaintiff in the SRG Program upon his readmission in October 2018, without re-assessing his risk to the Department of Correction, staff, or other inmates, solely because he had been placed in that Program during his prior confinement but had not completed all phases of the Program prior to his discharge on bond. These allegations are sufficient to state a plausible substantive due process claim against Directors of Security Antonio Santiago and Christine Whidden and SRG Coordinator Aldi in connection with his placement in the SRG Program in October 2018. This substantive due process claim will proceed against SRG Coordinator Aldi and Security Director Whidden in their individual capacities and Security Director Santiago in his individual capacity and in his official capacity to the extent that the plaintiff seeks injunctive relief.

### 2.    Conditions of Confinement as Detainee

Plaintiff describes various conditions that he experienced in Phase 3 of the SRG Program at Corrigan-Radgowski as a pretrial detainee after his readmission in October 2018 until he was sentenced in April 2019 including: a lack of access to a library, vocational and educational classes, group religious services, a brush to clean his toilet, and a hot pot; and limited access to showers, telephone calls, visits from family members, and time in the gym. In addition, prison

officials imposed a spending limit on his commissary purchases and required him to brush his teeth with a small toothbrush, use a security pen to write letters or grievances, and wear a white jumpsuit.  As a pretrial detainee in the SRG Program, he could not earn good time credits and was not eligible to be released to a halfway house or on parole.  Compl. at 25 ¶¶ 2, 4-15.  The plaintiff does not specifically allege that any named defendant was aware of or responsible for the conditions at Corrigan-Radgowski during his confinement in Phase 3 of the SRG Program as a pretrial detainee.  The court liberally construes the complaint to assert these allegations against SRG Coordinator Aldi and Security Directors Santiago and Whidden.

In *Darnell v. Pineiro*, 849 F.3d 17 (2017), the Second Circuit observed that a pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways.  The detainee can assert facts to demonstrate that prison officials were deliberately  or recklessly indifferent to a serious deprivation of his or her basic human needs or a life necessity and/or can assert facts to show that conditions to which he or she was exposed were punitive because they were not reasonably related to a legitimate governmental interest such as prison safety or security.  *Id.* at 34 n.12 ("A pretrial detainee can establish a substantive due process claim for inhumane conditions of confinement either by proving an official's deliberate indifference to those conditions, or by proving that that those conditions are punitive.")

### a.        Conditions as Punishment

In *Bell*, the Supreme Court held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  441 U.S. at 539.  In *Allah*, the Second Circuit examined certain conditions imposed on the plaintiff as a pretrial detainee in the administrative segregation program and questioned whether those conditions "were reasonably related to the ostensible goal

13

of prison security," including strict limits on visits, phone calls,  mail and whether certain other conditions "although plausibly related to security concerns in general, were so excessively harsh as to be punitive," such as solitary confinement for 23 hours per day, showering in leg irons, and lack of access to programming, counseling, or therapy.  876 F.3d at 58.

The plaintiff has asserted that SRG Coordinator Aldi subjected him to various restrictive conditions of confinement during his confinement at Corrigan-Radgowski in Phase 3 of the SRG Program, including some of the same conditions that the Second Circuit found to be questionable in *Almighty Supreme Born Allah*.  *See* Compl. at 25 (three telephone calls per day, no access to programming, no social contact through the cell doors, visitation only with family members and confinement in his cell 22 ½ hours a day).  The court concludes that the plaintiff has plausibly alleged that the conditions related to his confinement in his cell for 22 ½ hours a day and the restrictions on telephone calls, visitation, programming, and talking to other inmates through cell doors were sufficiently harsh and/or unrelated to legitimate safety or security concerns as to constitute punishment.  The allegation that SRG Coordinator Aldi and Security Directors Whidden and Santiago imposed these punitive conditions of confinement on the plaintiff from October 2018 to April 2019 in violation of his right to substantive due process under the Fourteenth Amendment will proceed against SRG Coordinator Aldi and Security Director Whidden in their individual capacities and Security Director Santiago in his individual capacity and in his official capacity to the extent that the plaintiff seeks injunctive relief.

**b.      Conditions as Deprivations of Human Needs**

In *Darnell*, the Second Circuit held that a pretrial detainee may state a claim of deliberate indifference to unconstitutional conditions of confinement under the Fourteenth Amendment by asserting facts to meet two separate prongs.  849 F.3d at 29.  Under the first

prong, a detainee must allege that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citation omitted).  A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency, considering, among other things, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter, medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health.  *See id.*

The second or subjective prong, also called the "*mens rea* prong, of [the] deliberate indifference [standard] is defined objectively." *Id.* at 35.  Thus, "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have" created a condition that poses "a substantial risk of harm" to a detainee.  *Id.*  To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*

Although the conditions to which the plaintiff was exposed as a pretrial detainee at Corrigan-Radgowski might have been restrictive, harsh or uncomfortable, the plaintiff does not allege that these conditions deprived him of a basic human need or necessity or exposed him to a serious risk of harm to his safety or health.  Thus, he has not met the objective deprivation prong of the Fourteenth Amendment conditions of confinement standard.  *See id.* at 29, 30 (internal quotation marks omitted) (To satisfy the first prong of a Fourteenth Amendment conditions

claim, a detainee must show "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process. . . . [T]o establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health"); *Doyle v. Santiago*, No. 3:19-cv-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) ("Although the conditions described [in phases 2 and 3 of the SRG Program] may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional.").

Because the plaintiff has not alleged that any defendant subjected him to conditions that deprived him of a basic human need or exposed him to a substantial risk of harm to his health or safety during his confinement at Corrigan-Radgowski as a pretrial detainee, he has not stated a plausible Fourteenth Amendment claim under the standard set forth in *Darnell*.  The Fourteenth Amendment claim regarding conditions at Corrigan-Radgowski during the plaintiff's confinement in Phase 3 of the SRG Program as a detainee from October 2018 to April 2019 is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### 3.     **Procedural Due Process**

The plaintiff also asserts that SRG Coordinator Aldi and Security Directors Whidden and Santiago failed to provide him with procedural due process in connection with his automatic placement in Phase 3 of the SRG Program in October 2018.  He contends that he was entitled to a 90-Review but did not receive such a review.

To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege that the "[d]efendants deprived him of a cognizable interest in life, liberty, or property. . . without affording him constitutionally sufficient process."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).  The nature and purpose of the

restrictive confinement status dictate the type of process that is due.  *See Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001).

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court considered what process should be afforded an inmate who had been placed in administrative segregation pending an investigation into a disciplinary charge.  *Id.* at 474.  The Court explained that it was appropriate to place an inmate in administrative segregation when necessary to incapacitate an inmate who "represents a security threat" or to "complet[e] . . . an investigation into misconduct charges."  *Id.* at 476.  The Court held that in connection with an inmate's placement on administrative segregation, he or she "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation."  *Id.* at 476.  In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than for disciplinary reasons.

In *Wolff v. McDonnel*, 418 U.S. 539, 564-66 (1973), the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action.  An inmate has no right to retained or appointed counsel at

a disciplinary hearing but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate. *Id.* at 570.

The plaintiff suggests that his confinement in the SRG Program was punitive based on the nature of the conditions to which he was exposed during his confinement in Phase 3 as a pretrial detainee from October 2018 to April 2019. Whether his confinement in the Program is considered to be administrative or punitive/disciplinary, the plaintiff has alleged that he received no process upon his readmission to the Department of Correction in October 2018. The plaintiff has asserted sufficient facts to state a plausible Fourteenth Amendment procedural due process claim under either *Hewitt* or *Wolff* against SRG Coordinator Aldi and Security Director Whidden in their individual capacities and Security Director Santiago in his individual capacity and in his official capacity to the extent that the plaintiff seeks injunctive relief.

### D.    Remaining Claims

The plaintiff alleges that after sentencing, he continued to endure the restrictive conditions of Phase 3 of the SRG Program in violation of his rights under the Eighth Amendment. In addition to his exposure to restrictive conditions of confinement, the plaintiff alleges that on June 30, 2019, he was involved in a physical altercation with an inmate member of the SRG to which he had been designated—the Bloods. He contends that the defendants were deliberately indifferent to his safety by subjecting him to an assault during his confinement in Phase 3 of the SRG Program as a sentenced inmate. The plaintiff also includes allegations regarding his mental health treatment. He alleges that prior to his re-admission to Corrigan-Radgowski in October 2018, a mental health provider diagnosed him as suffering from multiple mental health conditions. He contends that mental health staff members at Corrigan-Radgowski

failed to adequately treat these conditions while he was both a pretrial detainee and as a sentenced prisoner beginning in April 2019.

The Eighth Amendment protects the rights of a convicted prisoner.  *See Bell*, 441 U.S. at 535 n.16 ("A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment.").  Thus, the Eighth Amendment would only be applicable to incidents or conduct that occurred after the plaintiff became a sentenced inmate on April 10, 2019.  The allegations regarding the conditions of confinement that the plaintiff experienced after sentencing and the allegations regarding the lack of adequate mental health treatment available to him both as a pretrial detainee and a sentenced inmate are generally asserted against SRG Coordinator Aldi and Security Directors Whidden and Santiago. The plaintiff has not named any mental health or other staff members at Corrigan-Radgowski as defendants.

The court concludes that the plaintiff's Eighth Amendment conditions of confinement, deliberate indifference to mental health needs, and deliberate indifference to safety claims that pertain to his confinement as a sentenced inmate and his Fourteenth Amendment deliberate or reckless indifference to mental health needs claim that pertains to his confinement as a pretrial detainee are improperly joined in this action.  Federal Rule of Civil Procedure 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: first, the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and second, "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008).  As the Second Circuit has observed in the

Rule 13 context,[3] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The plaintiff's conditions of confinement and mental health treatment claims that pertain to his confinement as a sentenced inmate and his mental health treatment claim that pertains to his confinement as a pretrial detainee arise from different occurrences or transactions and involve correctional employees or mental health staff members at Corrigan-Radgowski. These claims involve different legal theories and do not contain any questions of law or fact common to the Fourteenth Amendment due process claim that proceed against SRG Coordinator Aldi and Security Directors Whidden and Santiago. Thus, the Eighth Amendment conditions of confinement and deliberate indifference to mental health needs and safety claims, as well as the Fourteenth Amendment deliberate/reckless indifference to mental health needs claim, are improperly joined in this action in violation of Rule 20.[4] *See Wilson v. McKenna*, No. 3:12-cv-1581 (VLB), 2015 WL 1471908, at *6-7 (D. Conn. March 31, 2015) (advising plaintiff that

---

[3] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008).

[4] The court notes that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoners' complaints pursuant to section 1915A of title 28 of the United States Code. As two commentators have noted:

In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

John Boston & Daniel E. Manville, Prisoners' Self-Help Litigation Manual 348 (4th ed. 2010) (collecting cases).

improperly joined claims must be pursued in separate actions).

The Eighth Amendment conditions of confinement and deliberate indifference to safety and mental health needs claims and the Fourteenth Amendment deliberate/reckless indifference to mental health needs claim asserted against SRG Coordinator Aldi and Security Directors Whidden and Santiago are severed from this action and dismissed without prejudice.  *See* Rules 20 and 21, Fed. R. Civ. P.  If the plaintiff seeks to pursue these claims, he must do so in separate actions.

## ORDERS

The court enters the following orders:

**(1)**      The Motion for Relief, [**ECF No. 10**], seeking an order that the court either waive the filing fee in full or direct the Department of Correction to cease deducting funds from the plaintiff's inmate account towards payment of the full filing fee, is **DENIED.**  The request for compensatory and punitive damages from the defendants in their official capacities is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The request for declaratory relief and the Fourteenth Amendment substantive due process claim that SRG Coordinator Aldi and Security Directors Whidden and Santiago subjected the plaintiff to conditions that deprived him of basic human needs during his confinement in Phase 3 of the SRG Program as a detainee from October 2018 to April 2019 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The First Amendment retaliation claim and the Fourteenth Amendment due process claim related to the plaintiff's designation as an SRG member in May 2018 are **DISMISSED** without prejudice for failure to fully and properly exhaust available administrative remedies prior to filing this action pursuant to 42 U.S.C. § 1997e(a).  If the plaintiff can allege facts and provide evidence that he did exhaust his available remedies in a timely and proper manner in accordance

with the requirements set forth in Administrative Directive 9.6, he may file a notice and exhibits to that effect no later than forty-five days from the date of this order. If the plaintiff fails to do so, all claims against Hearing Officer Acevedo, Lieutenant Russell, and Correctional Officer Payne shall be dismissed with prejudice.

The Eighth Amendment conditions of confinement and deliberate indifference to safety and mental health needs claims and the Fourteenth Amendment deliberate/reckless indifferent to mental health needs claim asserted against SRG Coordinator Aldi and Security Directors Whidden and Santiago are **SEVERED** from this action and **DISMISSED** without prejudice pursuant to Rules 20 and 21, Fed. R. Civ. P.  If the plaintiff seeks to pursue these claims, he must do so in separate actions.

The following claims will **PROCEED** against SRG Coordinator Aldi and Security Director Whidden in their individual capacities and Security Director Santiago in his individual capacity and in his official capacity to the extent that the plaintiff seeks injunctive relief:

    (a) the Fourteenth Amendment substantive due process claim related to the plaintiff's automatic placement in the SRG Program upon his readmission to the Department of Correction in October 2018;

    (b) the Fourteenth Amendment substantive due process claim related to the imposition of punitive conditions of confinement on the plaintiff after his readmission to the SRG Program in October 2018 until his sentencing in April 2019;

    (c) the Fourteenth Amendment procedural due process related to his automatic placement in the SRG Program upon his readmission to the Department of Correction in October 2018; and

    (d) the state law claim of intentional infliction of emotional distress.

(**2**)     Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on Director of Security Antonio Santiago in his official capacity by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(**3**)     Within twenty-one (40) days of this Order, the Clerk shall verify the current work addresses of: SRG Coordinator John Aldi, Security Director Christine Whidden, and Security Director Antonio Santiago and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address.  On the sixtieth (60th) day after mailing, the Clerk shall report to the court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(**4**)     Defendants Aldi, Santiago and Whidden shall file their response to the complaint, either an answer or motion to dismiss, within ninety (90) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include all additional defenses permitted by the Federal Rules.

(**5**)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within nine months (270 days) from the date of this order.  Discovery requests should not be filed with the court.

(**6**)     All motions for summary judgment shall be filed within ten months (300 days) from the date of this order.

**(7)**     The Clerk shall send a copy of the complaint and this order to the Connecticut

Attorney General and to the Department of Correction Legal Affairs Unit.

**(8)**     The parties must comply with the District of Connecticut "Standing Order Re:

Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can

be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Hartford, Connecticut this 25th day of June, 2020.

/s/ Dominic J. Squatrito
_____
                         DOMINIC J. SQUATRITO
                         UNITED STATES DISTRICT JUDGE