UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| PERCY HOWARD,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:19cv1624(KAD) |
| | : |
| DIRECTOR ANTONIO SANTIAGO, et al.,<br>    Defendants. | :<br>: |

## MEMORANDUM OF DECISION RE: MOTION TO DISMISS (ECF. 22)

The plaintiff, Percy Howard, currently incarcerated at the Brooklyn Correctional Institution, initiated this civil rights action by filing a complaint against Directors of Security Antonio Santiago and Christine Whidden, Security Risk Group Coordinator Aldi ("SRG Coordinator Aldi"), Hearing Officer Acevedo, Lieutenant Russell and Correctional Officer Payne. Compl., ECF No. 1. Howard's claims arise out of his admission to the New Haven Correctional Center in April 2018 as a pretrial detainee, his readmission to the Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski") in October 2018, again as a pretrial detainee, and his designation to and confinement in the Security Risk Group (SRG) program at Corrigan-Radgowski until and after his sentencing in April 2019. *Id.* at 1-8, 25-26. For relief, Howard seeks compensatory and punitive damages, a declaratory judgment that the defendants violated his constitutional rights and an injunction directing Security Director Santiago to place him in general population. *Id.* at 33.

Upon initial review, the court permitted the following claims to proceed: the Fourteenth Amendment substantive and procedural due process claims arising out of Howard's automatic placement in the SRG Program upon his readmission to the Department of Correction in October

2018; the Fourteenth Amendment substantive due process claim arising out of the allegedly punitive conditions of confinement in the SRG Program, and a state law claim of intentional infliction of emotional distress against SRG Coordinator Aldi and Security Director Whidden in their individual capacities and Security Director Santiago in his individual capacity and in his official capacity to the extent that Howard seeks injunctive relief.  *Id.*  The court dismissed all other claims. *See,* IRO ECF No. 13. On August 31, 2020, Defendants Aldi, Whidden and Santiago filed the instant motion to dismiss the intentional infliction of emotional distress claim. For the reasons set forth below, the motion is granted.

**Standard of Review**

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the complaint's factual allegations as true and must draw inferences in the plaintiff's favor.  *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  A motion filed pursuant to "Rule 12(b)(6) must be decided on 'facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'"  *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, 155 (D. Conn. 2010) (quoting *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (brackets omitted).  The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"

2

*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

### Allegations

At the end of April 2018, Howard was confined at New Haven Correctional Center as a pretrial detainee.  Compl. at 7 ¶¶ 1 & at 9.  On April 30, 2018, Officer Payne and Lieutenant Russell, who were members of the Intelligence Unit, interviewed Howard about comments and photographs that had been posted to his Facebook page prior to his admission to New Haven Correctional Center.  *Id.* ¶ 2 & at 9-10, 12.  Lieutenant Russell and Officer Payne accused Howard of being affiliated with the Bloods gang, an SRG, based on his Facebook posts.  *Id.* ¶ 3 & at 9, 12.  At the conclusion of the interview, Lieutenant Russell and Officer Payne informed Howard that SRG Coordinator Aldi had directed them to charge him with SRG affiliation because he had exhibited known hand signs, and/or colors, and/or graffiti, and/or articles that could be attributed to his SRG.  *Id*. at 7 ¶ 5; at 14.  Howard received written notification regarding the date of the SRG Membership/Designation Hearing would be held on May 2, 2018.  *Id.* at 14.

On May 3, 2018, Howard participated in a hearing.  *Id.* at 7 ¶¶ 8-10.  Hearing Officer Acevedo informed Howard that he would be unable to "beat" the charge that he was affiliated with the Bloods gang.  *Id.* ¶ 9.  At the conclusion of the hearing, Officer Acevedo designated Howard as a member of an SRG.  *Id.* ¶ 10.  On August 16, 2018, Howard posted bond and prison officials discharged him from the Department of Correction.  *Id.* ¶ 12.

On October 6, 2018, prison officials readmitted Howard to a Department of Correction facility as a pretrial detainee.  *Id.* at 8 ¶¶ 21, 26.  Prison officials transferred Howard to

3

administrative segregation to participate in Phase 3 of the SRG Program at Corrigan-Radgowski without providing him with a 90-day review in accordance with State of Connecticut Department of Correction Administrative Directive 6.14.  *Id.* ¶ 22.

On April 10, 2019, a judge sentenced Howard to four years of imprisonment.  *See* *http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=306662*.  Howard remained in Phase 3 of the SRG program at Corrigan-Radgowski after he was sentenced.  *Id.* at 25 ¶¶ 1-16. He experienced many restrictive or uncomfortable conditions of confinement in Phase 3 of the SRG Program as a pretrial detainee from October 2018 to April 2019 and as a sentenced prisoner after April 10, 2019.  *Id.*  Those conditions included a lack of access to a library, vocational and educational classes, group religious services and a brush to clean his toilet and limited access to showers, telephone calls, visits from family members and time in the gym.  *Id.*  In addition, prison officials required Howard to brush his teeth with a small toothbrush, write letters and grievances with a security pen, and wear a white jumpsuit, prohibited him from purchasing a hot pot to warm up his food, and imposed a spending limit on his commissary purchases.  *Id.* ¶¶ 4-15.  As an inmate participating in the SRG Program, Howard could not receive good time credits or be released to a halfway house or on parole.  *Id.* ¶ 2.

Prior to his admission to the Department of Correction in October 2018, mental health providers had diagnosed Howard as suffering from anxiety, depression, post-traumatic stress disorder, hearing voices and experiencing sleep issues and had prescribed medications to treat his conditions and symptoms.  *Id.* at 8 ¶ 29; at 26 ¶¶ 24-25, 27.  After his reincarceration in October 2018, mental health providers did not prescribe Howard the same medications that a medical provider had previously prescribed to him when he was out of prison.  *Id.* at 8 ¶ 29; at 26 ¶¶ 25-

4

27.

**Discussion**

**Intentional Infliction of Emotional Distress (IIED)**

In Connecticut, to state a claim of intentional infliction of emotional distress, Plaintiff must allege: (1) that the Defendant intended to inflict emotional distress or knew or should have known that such distress was a likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that the Defendant's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe. *See Appleton v. Bd. of Educ. of Town of Stonington*, 757 A.2d 1059, 1062 (2000) (citing *Petyan v. Ellis*, 510 A.2d 1337, 1342 (1986)). The standard in Connecticut to demonstrate extreme and outrageous conduct is "stringent." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). Extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society." *Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006) (internal quotation marks omitted) (citing *Carrol v. Allstate Insurance Co.*, 815 A.2d 119, 126 (2003)). It is conduct that is "regarded as atrocious, and utterly intolerable in a civilized community. . . . [where] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Appleton*, 757 A.2d at 1062 (citation omitted; internal quotation marks omitted). Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* (internal quotation marks omitted).

Whether "conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court." *Miner v. Town of Cheshire*, 126 F. Supp. 2d

184, 194 (D. Conn. 2000) (citing *Johnson v. Chesebrough–Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn. 1996)). Only where reasonable minds might disagree does it become an issue for the jury. *DiTeresi v. Stamford Health System, Inc.*, 63 A.3d 1011, 1020 (2013).

Defendants assert that Howard has failed to assert facts to support any of the requisites to bringing a claim for IIED. The court agrees. In describing his claim of intentional infliction of emotional distress, Howard alleges that Santiago, Whidden and Aldi are liable because their actions in placing him in the SRG program caused him "extreme emotional distress." Compl. at 4, 6. In response to the motion to dismiss, Howard further asserts that he is not a member of a gang and that the defendants' actions, in placing him in a unit with a group of violent gang members on the "flimsiest" of evidence, i.e. social media posts, is outrageous and shocks the conscience. Such conclusory allegations do not elevate a disagreement over the factual question of gang membership (and therefore placement in the SRG program) into an intentional conscience shocking tort.

Indeed, Howard does not allege facts to support any inference that Santiago, Whidden or Aldi actually intended to cause him emotional distress by placing him in the SRG program. Nor has Howard asserted facts from which the court could infer that he actually suffered "extreme emotional distress" during the six months he was confined in the SRG program. Here merely asserts that his mental health conditions were exacerbated by inadequate treatment received while in the program. *See, e.g.*, *Squeo v. Norwalk Hosp. Ass'n*, 316 Conn. 558, 600, 113 A.3d 932, 957 (2015) (The emotional distress "must be so severe that no reasonable person could be expected to endure it."). Nor can the court conclude that the actions of the Defendants were "extreme and outrageous," as those terms are defined at common law. *See, supra.* at 5-6. The

motion to dismiss the state law claim of intentional infliction of emotional distress is granted.

### Negligent Infliction of Emotional Distress (NIED)

In the alternative, Howard requests that the court construe the complaint as asserting a claim of negligent infliction of emotional distress. To state a claim of negligent infliction of emotional distress, a plaintiff must prove that:

> (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.

*Hall v. Bergman*, 296 Conn. 169, 182 n.8, 994 A.2d 666 (2010) (quoting *Carrol.*, 262 Conn. at 444, 815 A.2d at 127). The court need not decide whether the allegations in the complaint plausibly allege a negligent infliction of emotional distress claim, because any such claim is barred by the Eleventh Amendment, and/or statutory immunity and/or sovereign immunity.

To the extent that Howard asserts this negligence claim against Santiago in his official capacity seeking injunctive relief, the claim is barred by the Eleventh Amendment. *See Vega v. Semple*, 963 F.3d 259, 283-84 (2d Cir. 2020) (holding plaintiff's claims for "prospective relief against Defendants in their official capacity for violations of the Connecticut Constitution and state law . . . are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine.") (internal quotation marks omitted). Accordingly, the claim against Santiago seeking injunctive relief for negligent infliction of emotional distress is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Conn. Gen. Stat. §4-165 provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4–165. Connecticut courts have held that "wanton, reckless, or malicious" acts go beyond gross negligence, and

denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379, 802 A.2d 814, 819 (2002) (internal quotation marks and citation omitted). Accordingly, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003).[1] There can be no question that the defendants were acting within the scope of their employment. Accordingly, any purported negligent infliction of emotional distress claims against Santiago, Whidden and Aldi in their individual capacities are barred by statutory immunity under Conn. Gen. Stat. § 4-165 and are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

Although it is not clear that Howard intended to do so, to the extent the NIED claim might be asserted against these defendants in their official capacities, such claims are barred by sovereign immunity. The doctrine of sovereign immunity "protects state officials and employees from lawsuits resulting from performance of their duty." *Hultman v. Blumenthal*, 67 Conn. App. 613, 620, 787 A.2d 666, 672, *cert. denied*, 259 Conn. 929, 793 A.2d 253 (2002). The doctrine applies both to lawsuits seeking monetary damages against the state and to lawsuits seeking monetary damages against state officials in their official capacities. *See Miller*, 265 Conn. at 313, 828 A.2d at 558 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation marks and citation omitted). Howard asserts no claim that Santiago, Whidden or Aldi waived

---

[1] In addition, "[a]ny person having a complaint for such damage or injury" must "present ... [the] claim against the state" to the State Claims Commissioner who may authorize an action against the state or a state official. Conn. Gen. Stat. §§ 4-160(a), 4-165(a). When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted." Conn. Gen. Stat. § 4-160(c). Howard has not asserted that he filed a claim with the Connecticut Claims Commissioner or that he received the required authorization to file suit against the State and its officials.

sovereign immunity to suits alleging the negligent infliction of emotional distress against them in their official capacities. Accordingly, the claims seeking money damages against Santiago, Whidden and Aldi in their official capacities for negligent infliction of emotional distress are barred by sovereign immunity and are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

Although not raised by motion, the court observes that upon initial review, Howard's First Amendment retaliation claim and Fourteenth Amendment due process claims related to his designation as an SRG member and placement in the SRG program in May 2018 were dismissed without prejudice because it did not appear that Howard had fully exhausted his available administrative remedies as to these claims prior to filing this action as required by 42 U.S.C. § 1997e(a). *See* IRO, ECF No. 13, at 7-10, 21-22. Howard was permitted forty-five days to file a notice and evidence demonstrating that he had exhausted his available administrative remedies in a timely and proper manner, *id.* at 22 and cautioned Howard that if he failed to do so, those claims would be dismissed with prejudice. Howard did not file any notice or evidence that he exhausted his administrative remedies as to these claims. Accordingly, the First Amendment retaliation claims and the Fourteenth Amendment due process claims arising out of his designation to the SRG program are DISMISSED with prejudice.

**Conclusion**

The Motion to Dismiss [**ECF No. 22**] the intentional infliction of emotional distress claim is **GRANTED**. To the extent that the complaint may be construed to assert a claim of negligent infliction of emotional distress, that claim is **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and (2). Because Howard did not file a notice and evidence of his attempts to exhaust the First Amendment retaliation claim and the Fourteenth Amendment due process claim

related to his designation as an SRG member in May 2018, those claims are **DISMISSED** with prejudice pursuant to court's Initial Review Order, [ECF No. 13].

SO ORDERED at Bridgeport, Connecticut this 28th day of January, 2021.

\_\_/s/_____
Kari A. Dooley
United States District Judge